# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ATROPIN PALMER,**  **CASE NO. 2:08-cv-726**
**JUDGE FROST**
**Petitioner,**  **MAGISTRATE JUDGE KEMP**

v.

**MICHELLE EBERLIN, Warden,**

**Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's amended traverse, and the exhibits of the parties. For the reasons that follow, petitioner's request for discovery, an evidentiary hearing, a free copy of the trial transcripts, and for "verification and certification" of his amended traverse, Doc. Nos. 42-45, 47, 50, are **DENIED**. Petitioner's motion to amend the traverse, Doc. No. 46, is **GRANTED**. His request for the appointment of counsel, see Doc. No. 46, is **DENIED**. The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### REQUEST FOR DISCOVERY; EXPANSION OF RECORD

As explained below, this case involves petitioner's state court conviction for, among other things, an aggravated burglary charge arising out of his alleged assault and pursuit of a woman named Amber Hood. Petitioner has filed a request for discovery, in which he appears to request the government to provide the current location of Amber Hood; the name and address of the 911 operator; and names and addresses of medical personnel who

arrived at the scene. Petitioner contends that the foregoing will establish that the government knowingly introduced false testimony and committed prosecutorial misconduct. Respondent opposes petitioner's request. See Doc. No. 48.

The discovery processes contained in the Federal Rules of Civil Procedure do not apply across the board in habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases in the United States District Courts were promulgated in 1976.

Specifically, Rule 6(a) provides –

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is... entitled to relief....'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300). *See also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *rehearing en banc denied*, Nov. 29, 2001.

> "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford*, 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

Petitioner has failed to meet this standard here. For the reasons discussed, *infra*, his claims are procedurally defaulted or plainly lack merit. Petitioner's request(s) for discovery, Doc. No. 44, therefore is **DENIED.**

Petitioner also has filed a motion for expansion of the record, in which he contends that evidence used against him was not properly authenticated, in violation of Ohio law. *See Motion for Expansion of Record,* Doc. No. 43. However, this Court is unable to discern what, if any, additional documents petitioner seeks to include that are not already a part of the record before this Court. Further, it does not appear that any additional records, that have not already been provided by respondent, are required for resolution of petitioner's claims. Therefore, his request for expansion of the record, Doc. No. 43, likewise is **DENIED**.

**REQUEST FOR COPIES OF RECORDS FREE OF COST**

Petitioner requests a free copy of the trial transcript and a copy of the traverse and amended traverse he filed in this case. He also seeks a "copy of the objection filed by Petitioner" and a "Civil Docket Print-out." Doc. Nos. 45, 50. Criminal defendants are entitled to a transcript at state expense for use during direct appeal, but there is no

constitutional right to a free transcript in a collateral proceeding. *United States v. MacCollom*, 426 U. S. 317 (1976); *Ross v. Moffitt*, 417 U. S. 600 (1974).

Respondent is required by 28 U.S.C. § 2249 to file with this court certified copies of "the indictment, plea of petitioner and the judgment, or such of them as may be material to the questions raised, if petitioner fails to attach them to the return to the writ, or to the answer to the show cause order." Rule 5(c), Rules Governing Section 2254 Cases in the United States District Courts, directs that the answer shall have attached "such portions of the transcript the answering party deems relevant." A transcript is usually required when the court considers the merits of a sufficiency of the evidence claim. 28 U.S.C. § 2254(f)[1]; *Nash v. Eberlin,* 437 F.3d 519, 525 (6th Cir. 2006). Rule 7 permits the court to expand the record to include "additional materials relevant to the determination of the merits of the petition." Further, under 28 U.S.C. §2250, the clerk of court is required to furnish a petitioner proceeding *in forma pauperis* "certified copies of such documents or parts of the record on file in his office as may be required by order of the judge before whom the

---

[1]Section 2254(f)  reads:

> If the applicant challenges the sufficient of the evidence adduced in such State court proceeding to support the State Court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficient of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State Court's factual determination.

application is pending."

A copy of petitioner's transcripts were made available to him or his appellate counsel for purposes of his direct appeal, and it appears from petitioner's numerous pleadings in the state courts, as well as in this Court, that he has already obtained access of his state records in this case, as well as the documents that he has already filed. His request, Doc. Nos. 45, 50, therefore is **DENIED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> Just after midnight on September 1, 2004, Michael Merritt was watching television in his home in Steubenville when he heard his dog barking and a woman crying out for help. He looked out his window and saw appellant holding a woman down and punching her. Merritt called the police and then went out to help the woman.
>
> The woman, Amber Hood, ran with Merritt back to his house and he ushered her inside. Appellant followed them onto Merritt's porch. Merritt pushed appellant out of the way, closed his front door, and locked the deadbolt. According to Merritt, appellant punched out the glass windows in his front door and unlocked the deadbolt. Appellant then entered Merritt's foyer. The two struggled and appellant took a swing at Merritt. Merritt eventually forced appellant out of the house and appellant ran away.
>
> Patrolman Matthew Smarrella arrested appellant later that day on a charge of aggravated burglary. Appellant was taken to jail and processed. Later, while Detective Anthony Piergallini was taking appellant's fingerprints, appellant ran out of the police department. Numerous officers chased after appellant and caught him in an alley.

A Jefferson County grand jury indicted appellant on one count of aggravated burglary, a first degree felony in violation of R.C. 2911.11(A)(1); one count of escape, a second degree felony in violation of R.C. 2921.34(A)(1); two counts of aggravated menacing, first degree misdemeanors in violation of R.C. 2903.21; one count of assault, a first degree misdemeanor in violation of 2903.13(A); one count of carrying a concealed weapon, a first degree misdemeanor in violation of R.C. 2923.12; one count of falsification, a first degree misdemeanor in violation of R.C. 2921.13(A)(3); and one count of resisting arrest, a first degree misdemeanor in violation of R.C. 2921.33(B).

The case proceeded to a jury trial on November 23, 2004. Just prior to trial, appellant filed a motion to sever his indictment. He requested that the court grant him two separate trials-one on the escape charge and one on the aggravated burglary charge. Appellant asserted that if the jury found him guilty of one charge it would automatically find him guilty of the other. The court denied appellant's motion. Additionally, right before trial, plaintiff-appellee, the State of Ohio, dismissed all misdemeanor counts in the indictment. Thus, the case proceeded on an amended indictment containing only the two felonies-aggravated burglary and escape.

The jury found appellant guilty as charged. The court dismissed the jury and immediately proceeded to sentencing. It sentenced appellant to six years for aggravated burglary and four years for escape, to be served consecutively.

***

Merritt was the only witness who testified regarding the aggravated burglary. His testimony was as follows.

Merritt was watching television between midnight and 1:00 a.m. when he heard his dog barking and a woman crying out for help. (Tr. 92). When he looked out his window, Merritt saw appellant holding Hood down and punching her. (Tr. 92). Merritt called the police and ran out to help Hood. (Tr. 93). Hood got away from appellant and Merritt told her to run into

6

his house. (Tr. 94). Merritt and appellant followed Hood up onto Merritt's porch. (Tr. 94). Merritt told appellant to get off of his porch. (Tr. 94). He then went into his house and forced the front door closed against appellant. (Tr. 94-95). Merritt locked the deadbolt. (Tr. 95). Appellant then broke the glass in Merritt's front door, reached in, unlocked the deadbolt, and entered Merritt's foyer. (Tr. 95-96). Once appellant was in the house, he tried to push through Merritt and an altercation ensued. (Tr. 97). Merritt threw two punches at appellant. (Tr. 98). Appellant swung at Merritt in an attempt to punch him, but missed. (Tr. 98). Merritt was then able to force appellant out of his house. (Tr. 96-97).

Merritt's testimony clearly demonstrated that appellant used force to trespass into his home. It also clearly established that appellant attempted to inflict physical harm on Merritt when he took a swing at him. Appellant claims, however, that Merritt's testimony did not prove that when he entered the home, he had the intent to commit a criminal offense inside.

The jury could have inferred appellant's intent to commit a criminal act from Merritt's testimony regarding the events that transpired. Outside, appellant was holding Hood down and punching her. Once Hood got away from appellant, he chased her onto Merritt's porch. When Hood went inside and Merritt locked the door, appellant broke the windows and forced his way into Merritt's home. Appellant tried to push past Merritt and took a swing at him when Merritt tried to force appellant from his home. From these facts, the jury could reasonably infer that appellant had the intent to assault Hood and/or Merritt once inside the home.

*State v. Palmer*, 2006 WL 389626 (Ohio App. 7[th] Dist. February 17, 2006). Through counsel, petitioner raised three assignments of error. Petitioner also filed a supplemental brief in which he asserted an additional five assignments of error. *See id.* He raised the following claims:

1. AS A RESULT OF THE TRIAL COURT'S DENYING APPELLANT'S CRIMINAL RULE 14 MOTION TO SEVER COUNTS 1 AND 2 OF THE INDICTMENT FOR PURPOSES OF TRIAL, APPELLANT WAS DENIED A FAIR TRIAL.

2. TRIAL COURT'S ORDERING CONSECUTIVE SENTENCES DID NOT COMPLY WITH RC 2929.14(E), AND WAS NOT INCONFORMITY [sic.] WITH THE PRINCIPLES OF OHIO'S FELONY SENTENCING STATUTES.

3. THE CONVICTION OF THE DEFENDANT ON COUNT 1 OF THE INDICTMENT, AGGRAVATED BURGLARY, IN VIOLATION OF RC 2911.11(A)(1), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

4. IMPROPERLY JURY SELECTION, PREJUDICIAL IMPACT [sic.].

5. THE TRIAL COURT ERRED IN ITS INSTRUCTION [sic.] THE JURY TO THE INCORRECT STATEMENT OF THE LAW [sic.].

6. INSUFFICIENT EVIDENCE TO SUPPORTED [sic.] THE CONVICTION OF O.R.C. 2911.11(A)(1) [sic.].

7. IMPROPERLY [sic.] CHARGE ON THE ESCAPE ERRED THE TRIAL COURT [sic.].

8. INEFFECTIVE ASSISTANCE AND INEFFECTIVE REPRESENTATION OF COUNSEL [sic.].

*See id.* On February 17, 2006, the appellate court affirmed petitioner's convictions, but vacated his sentence and remanded the case to the trial court for re-sentencing. *Id.* Petitioner did not file a timely appeal. On August 7, 2006, petitioner filed a motion for delayed appeal. *Exhibit 13 to Return of Writ.* On October 4, 2006, the Ohio Supreme Court denied his motion for delayed appeal. *Exhibit 14 to Return of Writ; State v. Palmer*, 111 Ohio

St.3d 1408 (2006). Meanwhile,

> [p]ursuant to [the state appellate court's]remand, the trial court
> held another sentencing hearing on April 10, 2006. The court
> and counsel were aware that appellant's sentence was now to
> conform with *Foster*. The court again sentenced appellant to six
> years for aggravated burglary and four years for escape, to be
> served consecutively.
>
> Appellant filed a timely notice of appeal on May 1, 2006.
>
> Appellant's counsel in this matter has filed a no merit brief
> pursuant to *State v. Toney* (1970), 23 Ohio App.2d 203, 262
> N.E.2d 419, and asked to withdraw as counsel. Appellant also
> filed a pro se brief on his own behalf raising seven assignments
> of error.

*State v. Palmer*, 2007 WL 969423 (Ohio App. 7[th] Dist. March 27, 2007). The appellate court

granted appellate counsel's motion to withdraw, and considered the following assignments

of error raised by petitioner:

> 1. THE TRIAL COURT ERROR [sic.] WHEN IT SENTENCE
> [sic.] THE DEFENDANT-APPELLANT TO MORE-THAN-
> THE MINMUM [sic] CONCURRENT PRISON TERM [sic] IN
> VIOLATION OF FELONY SENTENCE STATUSE [sic.]
>
> 2. MR. ATROPIN PALMER WAS DENIED EFFECTIVE
> ASSISTANCE OF COUNSEL, WHEN COUNSEL FAILE [sic.]
> TO OBJECTED [sic.] TO THE USE OF INCORRECTED [sic.]
> FACTS AT THE RE-SENTENCING HEARIN [sic.] WHICH
> PREJUDICES THE DEFENSE.
>
> 3. THE TRIAL COURT ERRED WHEN IT SENTENCED THE
> DEFENDANT-APPELLANT TO MORE-THAN-THE-
> MINIMUM-CONCURRENT PRISON TERMS IN VIOLATION
> OF THE DUE PROCESS AND EX POST FACTO CLAUSES OF
> THE OHIO AND UNITED STATES CONSTITUTION[S].
>
> 4. THE TRIAL COURT ERRED WHEN IT SENTENCED THE

DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM CONCURRENT PRISON TERMS IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS.

5. THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE THAN-THE-MINIMUM-CONCURRENT PRISON TERMS BASED ON THE OHIO SUPREME COURT'S SEVERANCE OF THE OFFENDING PROVISIONS UNDER FOSTER, WHICH WAS AN ACT IN VIOLATION OF THE PRINCIPLE OF SEPARATION OF POWERS.

6. THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM-CONCURRENT PRISON TERMS CONTRARY TO THE RULE OF LENITY DICTATED A LESSER PENALTY [sic.]

7. THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM-CONCURRENT PRISON TERMS CONTRARY TO THE INTENT OF THE OHIO LEGISTLATORS.

*See id.* On March 27, 2007, the appellate court affirmed the judgment of the trial court. *Id.*

On September 26, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal.

*State v. Palmer*, 115 Ohio St.3d 1410 (2007).

Petitioner also pursued post conviction relief. Those proceedings are summarized

by the Ohio Seventh District Court of Appeals as follows:

> After filing a direct appeal and losing on all claims, Palmer filed a petition for post-conviction relief with the trial court claiming that trial counsel was ineffective in representing him. On August 18, 2005, the trial court denied his petition.

> On appeal, Palmer raises multiple issues and assignments of error. Many of them deal with Palmer's claim that his trial counsel was ineffective. They will be addressed together and

are as follows:

"not that it was a problem subpoen [sic] Ms. Amber Hood, it's the investigations of counsel and the effective assistance of reasonable ness [sic]."

"medical personnel was call to the resident; said medical personnel could have provided, had counsel made some reasonable investigation, to the police reports or these persons under reasonableness effective assistance of counsel."

"counsel with holding [sic] of exculpatory evidence. The evidence was a cassette recording that counsel had in her personal control and the significant of the information and testimony of the cassette recording, had counsel submit as evidence. Counsel disclosed this significant information regarding the alleged crime."

"the trial court error, when its decision was this was a unidentified person. When petitioner, Palmer made these allegation knowed [sic] in the postconviction to the court about his attorney was appointed by the court themselves [sic] for representation of him, now Mr. Palmer has realized the (tape recording counsel had could have provening [sic] his innocences [sic] ), this merely facts alleged current, was a possibility to called in questions his counsel performance and the 'Truth' to Mr. Palmer claim counsel conduct and action and representational."

***

Next, Palmer claims:

"trial court error, when it's ruling was without support, cause there not one statement from Ms. Hood, in the criminal rule16(B), 7(E), 12(D) BILL OF PARTICULARS & FOR DISCOVERY."

***

Next Palmer claims:

"under issue (3), testimony of Mr. Merritt is not contained in any of the criminal rule16(B), 7(E), 12(D)"

***

Finally, Palmer claims:

"trial court error, when it's ruling was without requirement of the law, which states ruling on a petition a court must made all finding to supported its facts finding with the law."

*See id.* On August 31, 2006, the appellate court affirmed the trial court's judgment. *Id.* On January 24, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Palmer*, 112 Ohio St.3d 1443 (2007).

Palmer filed another petition for post-conviction relief on June 30, 2008, claiming that he was previously unable to obtain the testimony of Amber Hood, which would provide clear and convincing evidence exculpating him from the alleged offenses. In this second petition, Palmer included a sworn affidavit by Hood. The sole reason Hood gave for not testifying at Palmer's trial was because she thought the charges against him were not true. The trial court denied Palmer's petition as untimely, not subject to a late-filing exception, successive and otherwise already addressed in the trial court's judgment resolving his first post-conviction petition.

***

Palmer's sole assignment of error asserts:

"The trial court committed [sic] error in denying appellant a hearing on his petition thus depriving appellant of liberties secured by U.S. Const. Amend. XIV and Ohio Const. Art. I §§ 1, 2, 10, and 16, including meaningful access to the courts of this state." Palmer also raises issues regarding the indictment, jury instructions, prosecutorial misconduct, and the sufficiency and weight of the evidence in his original trial.

12

*State v. Palmer*, 2009 WL 581703 (Ohio App. 7[th] Dist. March 6, 2009). On March 6, 2009, the appellate court affirmed the trial court's dismissal of his post conviction petition as untimely, successive, and barred under Ohio's doctrine of *res judicata. Id.* On July 29, 2009, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Palmer*, 122 Ohio St.3d 1478 (2009).

On March 15, 2006, petitioner filed an action construed by the state appellate court as a writ of prohibition, which was dismissed on October 18, 2006.[2] *State v. Palmer*, 2006

---

[2] The state appellate court dismissed petitioner's writ of prohibition in relevant part as follows:

> In Appeals Case No. 04-JE-41 this Court ordered a resentencing hearing after determining that the sentencing did not comport with Ohio's felony sentencing statutes. *State v. Palmer* (Feb. 17, 2006), 7th Dist., 2006-Ohio-749. The trial court set the matter for resentencing. However, the Ohio Supreme Court then decided the case of *State v. Foster* (2006), 109 Ohio St.3d 1, which found certain parts of the felony sentencing statutes to be unconstitutional. The trial court then issued an order on March 1, 2006, dismissing the resentencing hearing. It reimposed the original sentence without a hearing.

> Such action by the trial court prompted Relator to file a pleading on March 15, 2006 in Appeals Case No. 05JE47, asserting the denial of due process by his nonattendance at the resentencing hearing. It is this filing which was extracted from the record of Appeals Case No. 05JE47 and given this case number as an action in prohibition.

> However, the criminal docket for the trial court reveals that the trial court then rescheduled the resentencing hearing and had Petitioner transported back to Jefferson County to attend the resentencing hearing. On April 11, 2006 Relator was resentenced.

> Relator then filed a notice of appeal directed to the resentencing order. (Appeals Case No. 06JE20).

> ***

WL 3059925 (Ohio App. 7[th] Dist. October 18, 2006); *Exhibits 43-47 to Return of Writ.*

Additionally, on August 10, 2006, petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of appellate counsel due to his attorney's failure to raise on appeal a claim that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). *Exhibit 48 to Return of Writ.* On September 29, 2006, the appellate court denied petitioner's Rule 26(B) application as untimely. *Exhibit 49 to Return of Writ.* On December 4, 2006, the appellate court denied petitioner's motion for reconsideration. *See Exhibits 50, 51 to Return of Writ.* On January 24, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal as not involving any substantial constitutional question. *Exhibit 53 to Return of Writ.*

On July 25, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus

---

[I]t cannot be questioned that Respondent has the authority to issue a resentencing order pursuant to this Court's mandate.

Second, Respondent had already issued a resentencing order prior to this case being assigned a separate case number. Consequently, the request for relief is moot as the Respondent has undertaken a lawful action. Moreover, the Respondent rescheduled the resentencing hearing and conducted it with Relator present. There is no further relief which this Court could provide, as the Respondent has granted the relief requested in this petition.

Finally, Relator has a direct appeal pending from the resentencing order (Appeals Case No. 06JE20) and any claimed error in the resentencing could be raised in that appeal. Relator does not meet any of the criteria to be entitled to relief through prohibition.

For all the above stated reasons this action in prohibition is dismissed.

*State v. Palmer, supra*, 2006 WL 3059925.

14

pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. 5th and 14th Amendment violation.

Denied due process and equal protection rights from trial court's abuse of discretion in erring to grant petitioner's motion criminal Rule 14 to sever counts 1 and 2 of the indictment for the right to a fair trial.

2. 5th, 8th and 14[th] Amendment violation.

Trial court denied petitioner's due process and equal protection by creating cruel and unusual punishment when imposing consecutive sentencing terms and nonminimum term.

3. 5th, 6th and 14[th] Amendment violations.

Count 1 of the indictment violated due process of the jury's verdict of guilty against the manifest weight of the evidence not sustained proven beyond a reasonable doubt present at trial denied petitioner's a fair trial [sic].

4. 6th, 14th Amendment violation.

Jury selection pre-judicial impact tampering violated juror's voir dire selection of prior known juror's with the prosecutor's relationship with previous case and juror's and other juror's personal friendship co-prosecutor's wife [sic]. Denied petitioner fair trial [sic].

5. 5th, 6th and 14[th] Amendment violation.

Trial court's jury instruction(s) prejudicially violated petitioner's due process rights to the incorrect statement of the law of statutory definition of the constructive law.

6. 5th, 14th Amendment violation.

[D]ue process i[s] violated of the jury's verdict of guilty, insufficient evidence not sustained the insufficiency proven beyond a reasonable doubt presented at trial, denied petitioner a fair trial [sic].

7.  5th, 6th and 14th Amendment violation.

[T]rial court denied petitioner due process improper tried petitioner on count 1 of the indictment before the same juror's prejudicial and prejudice to a fair trial of the escape charge, that defense counsel effectiveness at trial in representing a fair trial on escap[e]s constituted criminal prosecution [sic].

8.  5th, 6th, 14th Amendment violation.

Petitioner was denied trial defense counsel's effectiveness at trial in cross examining testimonies of witnesses.

9.  5th, 6th and 14th Amendment violation.

Petitioner was denied trial defense counsel's effectiveness at re-sentencing hearing of failing to object to trial court on applying incorrected mitigating facts, violated Ex Post Facto Clauses.... and separation of powers under State Court severance of statutes of the Legislatures... intent.

10. 5th, 6th Amendment violation, due process 14th Amendment violations.

Petitioner received ineffective assistance of trial defense counsel when counsel failed to produce compulsory process, counsel withholding a recorded cassette tape, basis exculpatory evidence, counsel failure to sured [sic] the witness of the tape and the victim of the charge.

11.  5th, 6th, 14th Amendment violation.

Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

12. 5[th], 6[th] and 14[th] Amendment violation.

Petitioner was denied right to the post conviction application, w[h]ere there was clearly evidence of ineffective assistance of counsel, failed to sured [sic] evidence and knows witnesses.

13. 5[th], 6[th], 14[th] Amendment violation.

Petitioner denied right to appellate review when appellate counsel was effective for not rais[ing] meritorious errors also same appellate counsel file[d] no merit brief when meritorious errors w[ere] not raised.

It is the position of the respondent that petitioner's claims are procedurally defaulted, without merit, or not appropriate for federal habeas corpus relief.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.;Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam; Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456

U.S. 107, 129 (1982);*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

In claim one, petitioner asserts that he was denied a fair trial because the state trial court denied his motion to sever counts one and two of the indictment. In claim three, petitioner asserts that his conviction on count one of the indictment was against the manifest weight of the evidence, and that there was insufficient evidence to sustain this conviction. In claim four, petitioner asserts that he was denied a fair trial based on improper jury selection and its prejudicial impact. In claim five, petitioner asserts that he

was denied a fair trial due to improper jury instructions. In claim six, petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction on aggravated burglary. In claim seven, petitioner asserts that he was improperly tried on the charge of escape. In claim eight, petitioner asserts that he was denied the effective assistance of trial counsel. Petitioner raised all of the foregoing claims on direct appeal; however, he failed thereafter to file a timely appeal of the appellate court's February 17, 2006, decision denying his claims to the Ohio Supreme Court. Instead, on August 7, 2006, he filed a motion for delayed appeal pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a). On October 4, 2006, the Ohio Supreme Court denied petitioner's motion for delayed appeal.

The United States Court of Appeals for the Sixth Circuit in *Bonilla v. Hurley*, 370 F.3d 494, 497 (6[th] Cir. 2004), held that the Ohio Supreme Court's denial of a motion for delayed appeal under these circumstances constitutes a procedural default of the claims raised therein. *Id*. This Court therefore reaches this same conclusion here. Additionally, the Court notes that the state appellate court reviewed claim seven for plain error only, due to petitioner's failure to raise such objection at trial. *See State v. Palmer, supra*, 2006 WL 389626. The Sixth Circuit has consistently ruled that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice. See *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Scott v. Mitchell*, 209 F.3d 854, 866-71 (6th Cir.2000). Therefore, petitioner has procedurally defaulted claim seven on this basis as well.

19

In claim eleven, petitioner asserts that the prosecutor failed to disclose favorable evidence, i.e., testimony by Amber Hood and presented false testimony by Merritt. *See Traverse; Amended Traverse.* Petitioner attempted to raise this claim in a successive post conviction petition; however, the state appellate court explicitly refused to consider the merits of his claim as barred under Ohio's doctrine of *res judicata:*

> The new facts that Palmer offers in his petition are the statements of Hood. Palmer does not argue that he was unavoidably prevented from discovering or obtaining Hood's testimony at the time of trial or at any other point, but merely that such testimony would have undermined the State's case. The only statement addressing the previous unavailability of the evidence is Hood's sworn statement that she did not testify at trial because the charges against Palmer were untrue. Thus nothing in Palmer's petition indicates that he was unavoidably prevented from discovering the facts upon which his claim for relief is based. Additionally, Palmer's petition makes no claim based on a new federal or state right recognized by the United States Supreme Court that applies retroactively to his case. Therefore, Palmer has not satisfied the alternative criteria set forth in R.C. 2953.23(A)(1)(a). Palmer also failed to satisfy the second prong of R.C. 2953.23(A) because he presented no evidence to prove that Hood's present affidavit would have affected the outcome of his trial. The statements in the affidavit only address Hood's own credibility, and Hood's alleged unavailability to testify.
>
> Because Palmer did not satisfy the criteria set forth in R.C. 2953.23 governing untimely and successive post-conviction relief petitions, the trial court lacked jurisdiction to consider the merits of the petition. Thus, the trial court properly rejected Palmer's petition.
>
> Moreover, the issues Palmer has raised in this petition are barred by res judicata as they were previously addressed on direct appeal and in Palmer's first petition for post-conviction

relief. Principles of *res judicata* bar claims that were or could have been raised at trial, on direct appeal, or in a first petition for post-conviction relief. *State v. Davis*, 7th Dist. No. 04 MA 211, 2005-Ohio-2118, at ¶ 13-14, citing *State v. Apanovitch* (1995), 107 Ohio App.3d 82, 87, 667 N.E.2d 1041.

Palmer's first petition for post-conviction relief included the claim that Hood's testimony would have undermined the State's case, and that his counsel was constitutionally ineffective for having failed to procure her testimony. Palmer's second petition for post-conviction relief repeats the same claim regarding the importance of Hood's testimony, with the assertion that the absence of her testimony alone constituted a constitutional violation.

Palmer has narrowed the legal issues in his second petition, but did not raise any new ones. He has only raised identical issues which this court already addressed in his first petition. Palmer's additional discussion regarding the indictment; jury instructions; prosecutorial misconduct; and, the sufficiency and weight of the evidence in his original trial were addressed both on direct appeal and pursuant to his first petition. Given the foregoing, Palmer's arguments are barred by *res judicata*, and his sole assignment of error is meritless.

*State v. Palmer, supra,* 2009 WL 581703.

The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata* is an adequate ground for denying federal habeas relief. *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Further, the doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused to review the merits of claims in reliance on that doctrine. *See State v. Perry*, 10 Ohio St.2d 175 (1967); *State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981).

Petitioner has waived his right to present claims one, and claims three through eight and claim eleven for federal habeas corpus review. He may still obtain review of these claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations. Petitioner has failed to establish cause for his procedural defaults.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

## CLAIMS TWO AND NINE

In claim two, petitioner asserts that the trial court's imposition of consecutive sentences at his re-sentencing hearing denied him due process and equal protection, and constituted cruel and unusual punishment. In related claim nine, petitioner asserts that he was denied the effective assistance of counsel at his re-sentencing hearing because his attorney failed to object to the trial court's incorrect application of mitigating facts; he also appears to assert that his sentence violated the Ex Post Facto Clause, and Ohio's separation of powers doctrine.

Petitioner did not raise in the state courts a claim that his sentence violated the Equal Protection Clause or the Eighth Amendment. *See State v. Palmer, supra*, 2007 WL 969423; *see Exhibit 28 to Return of Writ*. In order to exhaust available state remedies, a petitioner

must first fairly present the substance of his federal habeas corpus claims to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v. Harless,* 459 U.S. 4, 6 (1982). "The state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love*, 782 F.2d 53, 55 (6th cir.1986). A petitioner does not fairly present a claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears to be self-evident. *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir.1983) (citing *Harless*, 459 U.S. at 6). Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing Constitutional analysis, or state decisions employing Constitutional analysis in similar fact patterns." *Franklin,* 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir.1984). Petitioner, however, need not "cite book and verse on the federal constitution." *Picard*, 404 U.S. at 277 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir.1960)). The Sixth Circuit has strictly followed the requirement that a petitioner fairly presented all federal constitutional claims to the state courts as a precondition to federal habeas review. *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir.1989). Petitioner failed to do so here.  He has failed to establish cause for such failure.  Further, because he may no longer present these claims to the Ohio courts, *see State v. Perry,* 10 Ohio St.2d 175 (1967), paragraph 9 of the syllabus, he has waived consideration of those claims in these proceedings.  *See Maupin v. Smith, supra.*

The state appellate court rejected petitioner's remaining allegations in claims two

and nine in relevant part as follows:

> The sentencing hearing took place on April 10, 2006. Because the Ohio Supreme Court decided *Foster*, 109 Ohio St.3d 1, after we remanded the case, the trial court was to comply with Foster's mandates and not the portions of Ohio's sentencing scheme that Foster held unconstitutional, upon which we had originally based our decision.

> In *Foster*, the court concluded, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id*. at ¶ 100. The Court further instructed: "Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." *Id*. at ¶ 105. Thus, we should review the trial court's sentence for an abuse of discretion. Abuse of discretion is more than a mere error of judgment; it is conduct that is arbitrary, capricious, unreasonable, or unconscionable. *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894.

> The same day *Foster* was decided, the Ohio Supreme Court decided a companion case. *State v. Mathis*, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855. In *Mathis*, the Court clarified Foster adding:

> "Although after *Foster*, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself." *Id.* at ¶ 38.

Appellant was convicted of aggravated burglary, a first-degree felony, and escape, a second-degree felony. The prison terms for a first degree felony are three, four, five, six, seven, eight, nine, or ten years. R.C. 2929.14(A)(1). The prison terms for a second-degree felony are two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2).

In resentencing appellant, the trial court considered the overriding principles and purposes of felony sentencing as set out in 2929.11(A), which are to protect the public from future crime by the offender and others and to punish the offender. R.C. (Tr. 23). It also considered the need for incapacitation, deterrence, rehabilitation, and imposing a sentence that is commensurate with the offense in accordance with R.C. 2929.11(B). (Tr. 23).

The court next considered the factors that made the offense more serious than conduct normally constituting the offense in accordance with R.C. 2929.12(B). Those factors are:

"(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

"(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

"(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

"(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

"(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

"(6) The offender's relationship with the victim facilitated the offense.

"(7) The offender committed the offense for hire or as a part of an organized criminal activity.

"(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

"(9) If the offense is * * * [domestic violence or some type of assault involving a family or household member], the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children." R.C. 2929.12(B).

Additionally, the court may consider any other relevant factors that indicate that the offender's conduct was more serious than conduct normally constituting the offense. R.C. 2929.12(B).

The court noted that it recalled the testimony and exhibits introduced at trial. (Tr. 23). It then stated that it found two factors which made the offense more serious: (1) the serious physical harm caused to the victim, Amber Hood; and (2) the fact that Hood had gotten away from appellant and sought refuge in Michael Merritt's house and appellant followed her into the house. (Tr. 23-24).

The court stated that it found that none of the factors set out in R.C. 2929.12(C) applied, which would have indicated that appellant's conduct was less serious than conduct normally constituting the offense. (Tr. 24).

Next, the court evaluated the recidivism factors in accordance with R.C. 2929.12(D). The factors indicating that the offender is likely to commit future crimes are:

"(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the

Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.

"(2) The offender previously was adjudicated a delinquent child * * *, or the offender has a history of criminal convictions.

"(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * *, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

"(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

"(5) The offender shows no genuine remorse for the offense." R.C. 2929.12(D).

The court found that appellant has a criminal history. (Tr. 24). It also found that although appellant was remorseful about getting into this situation, he had not shown any remorse about the fact that harm was caused or shown any remorse regarding his escape. (Tr. 24).

Finally, the court found that none of the factors indicating appellant is not likely to engage in future crimes applied. (Tr. 24).

These factors the court considered are merely "general guidance" factors and were not affected by *Foster.* As the Ohio Supreme Court observed, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster,* 109 Ohio St.3d at ¶ 42.

After reviewing all of the above factors, the trial court noted that R.C. 2992.13(D) provided a presumption in favor of a

prison term, which appellant did not rebut. (Tr. 25). R.C. 2929.13(D) states that a prison term is presumed necessary for first-degree and second-degree felonies. Appellant's aggravated burglary conviction was a first-degree felony while his escape conviction was a second-degree felony.

It is clear that the trial court did not abuse its discretion in sentencing appellant to six-year and four-year prison terms, to be served consecutively. The sentences are within the statutory ranges and the court gave ample reasoning to support its sentences. Thus, based on a thorough review of the record there is no error worthy of merit. Therefore, counsel's motion to withdraw is sustained.

Next, we must move on to address appellant's pro se assignments of error. His first assignment of error states:

"THE TRIAL COURT ERROR [sic.] WHEN IT SENTENCE [sic.] THE DEFENDANT-APPELLANT TO MORE-THAN-THE MINMUM [sic] CONCURRENT PRISON TERM [sic] IN VIOLATION OF FELONY SENTENCE STATUSE [sic.]"

Appellant argues that the trial court erred in failing to make the statutory findings required to sentence him to more-than-the-minimum, consecutive sentences. In making this argument, appellant relies on R.C. 2929.14(B)(C) and (E)(4) *State v. Comer,* 99 Ohio St.3d 463, 793 N.E.2d 473, 2003-Ohio-4165, and *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.

R.C. 2929.14(B)(C) and (E)(4) were expressly held to be unconstitutional in *Foster,* 109 Ohio St.3d 1. "Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional." *Id.* at paragraph one of the syllabus. "Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional." *Id.* at paragraph three of the syllabus. We cannot apply a statute that the Ohio Supreme Court has found

to be unconstitutional. Furthermore, *Comer* and *Edmonson* were abrogated by *Foster.* Accordingly, appellant's first assignment of error is without merit.

Appellant's second assignment of error states:

"MR. ATROPIN PALMER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, WHEN COUNSEL FAILE [sic.] TO OBJECTED [sic.] TO THE USE OF INCORRECTED [sic.] FACTS AT THE RE-SENTENCING HEARIN [sic.] WHICH PREJUDICES THE DEFENSE."

Here appellant argues that his counsel was ineffective at his resentencing hearing. He argues that counsel failed to research the facts of the case, which resulted in appellant being punished for a crime he did not commit. He also contends that his attorney should have argued that his crime was not the "worst form of the offense."

To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley,* 42 Ohio St.3d at paragraph three of the syllabus.

Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 289, 714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. *Id.*

First, appellant's counsel was not ineffective for failing to argue that appellant's crime was not the worst form of the offense. The language "worst form of the offense" comes from the unconstitutional R.C. 2929.14(C), dealing with maximum

sentences. As stated above, the Ohio Supreme Court has held R.C. 2929.14(C) to be unconstitutional. Furthermore, the trial court did not sentence appellant to the maximum prison term on either count. Therefore, appellant's counsel could not have been ineffective for failing to make an argument under an unconstitutional statute.

Second, appellant's counsel made several arguments at the sentencing hearing in an attempt to keep appellant's sentence low. He argued that, in light of *Foster,* the trial court could not now sentence appellant to consecutive sentences. (Tr. 8-9). He also argued that before this crime, appellant was employed. (Tr. 10). And counsel argued the facts of the case. He asserted that this was a case of a simple argument that was blown out of proportion. (Tr. 10-11). And he argued that the facts demonstrated that appellant had no intent to burglarize Merritt's home. (Tr. 10).

These arguments by counsel demonstrated that he was prepared and knew the facts of the case. Counsel made several different arguments in an attempt to persuade the court to give appellant a lighter sentence. The fact that the court ultimately sentenced appellant to the same sentence it had originally, does not make appellant's counsel ineffective.

Accordingly, appellant's second assignment of error is without merit.

Appellant's third and fourth assignments of error share a common basis in law and, therefore, we will address them together. They state:

"THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM-CONCURRENT PRISON TERMS IN VIOLATION OF THE DUE PROCESS AND EX POST FACTO CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTION[S]."

"THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM CONCURRENT PRISON TERMS IN VIOLATION

OF DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS."

Appellant argues that he had a presumption of minimum, concurrent sentences. He claims that by applying the remedy set out in *Foster,* the trial court took away the presumption of minimum, concurrent sentences. Appellant argues that judicial severance of parts of R.C. 2929.14 violates the ex post facto clause of the United States Constitution and violates his right to due process of law.

Several other appellate districts have recently addressed, and rejected, this argument for various reasons.

In a Second District case, the appellant argued that *Foster's* retroactive application would violate his right to due process and the ex post facto clause. *State v. Moffo,* 2d Dist. No.2005-CA-131, 2006-Ohio-5764. He further asserted that he was required to be sentenced to minimum, concurrent prison terms. In response to this argument, the court held:

"As an Ohio court inferior to the Supreme Court of Ohio, we are required to follow the supreme court's mandates, and we lack the jurisdictional power to declare a mandate of the Supreme Court of Ohio to be unconstitutional. *State v. Durbin,* Greene App. No.2005-CA-134, 2006-Ohio-5125, at ¶ 42. Accordingly, Moffo's argument that the mandate of the supreme court in *Foster* violates the United States Constitution is not cognizable in this court." *Id.* at ¶ 26.

In an earlier case, the Second District elaborated further. In *State v. Smith,* 2d Dist. No. 21004, 2006-Ohio-4405, the court stated that even if it was not bound by the *Foster* mandate, it did not believe that the *Foster* holding operated as an ex post facto law. It relied on a Seventh Circuit Court of Appeals decision in reaching its conclusion:

"The federal appellate courts have addressed the ex post facto argument in relation to the United States Supreme Court's decision in *United States v. Booker* (2005), 543 U.S. 220, which held that the federal statutory sentencing guidelines were unconstitutional if mandatorily applied, and remedied the

situation by making the guidelines advisory.

" * * * [W]e find the Seventh Circuit's rationale [as set out in *United States v. Jamison (C.A. 7*, 2005), 416 F.3d 538, 539] applicable to Smith's situation in light of the Ohio Supreme Court's decision in *State v. Foster.* Smith knew that his actions constituted a crime when he shot Dansby. The Ohio Supreme Court's decision to sever the provisions of the Ohio sentencing statutes in *Foster* affects Smith's punishment, not whether his actions constituted a criminal act. The statutory range of punishment Smith faced before the decision in *Foster* was between one and five years, and after *Foster,* Smith still faces between one and five years when his case is remanded for resentencing. Just as in *Jamison,* Smith was aware of the possible sentence he faced when committing the crime of felonious assault, and therefore, we conclude that the Ohio Supreme Court's decision in *Foster* does not violate the ex post facto clause." *Id.* at ¶ 33-34.

The Twelfth District followed the Second District's analysis in *State v. Doyle,* 12th Dist. No. CA2005-11-202, 2006-Ohio-5373. It reasoned:

"The same rationale applies here. Appellant knew his action constituted a crime when he received the stolen semi truck. The statutory range of punishment appellant faced before the decision in *Foster* was between six and 18 months, and after *Foster,* appellant still faces between six and 18 months when his case is remanded for resentencing. Appellant was aware of the possible sentence he faced when committing the crime of receiving stolen property. We therefore find that *Foster* does not violate the ex post facto and due process clauses." *Id.* at ¶ 50.

The Ninth District has also addressed the issue. In *State v. Newman,* 9th Dist. No. 23038, 2006-Ohio-4082, the appellant argued that *Foster's* remedy violates the ex post facto and due process clauses of the U.S. Constitution because it effectively increases the presumptive sentences for first-time offenders and exposes those convicted of fourth and fifth degree felonies to the statutory maximum. The court, rejecting this argument,

held:

"We are obligated to follow the Ohio Supreme Court's directive and we are, therefore, bound by *Foster*. Furthermore, we are confident that the Supreme Court would not direct us to violate the Constitution. See *U.S. v. Wade (C.A.8,* 2006), 435 F .3d 829, 832 (holding that the Eighth Circuit is required to follow the directive of the U.S. Supreme Court and presuming that the U.S. Supreme Court would not order a court to violate the Constitution). As this Court cannot overrule or modify *Foster,* we decline to consider Appellant's challenges thereto. Appellant will have the opportunity to present these arguments to the Supreme Court if he chooses to appeal from this decision." *Id.* at ¶ 11.

And the Third District addressed the issue in *State v. McGhee,* 3d Dist. No. 17-06-05, 2006-Ohio-5162. In finding the appellant's ex post facto and due process arguments unpersuasive, the court stated:

"Because McGhee knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in *Foster* violates federal notions of due process as established in *Bouie [v. Columbia* (1964), 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894,] and *Rogers [v. Tennessee* (2001), 532 U.S. 451, 121 S.Ct.1693, 149 L.Ed.2d 697]." *Id.* at ¶ 20.

The court also went on to analyze whether *Foster* created a substantially retroactive law as to violate the Ohio Constitution. It found that *Foster's* holding does not affect a vested right or an accrued substantive right. *Id.* at ¶ 23. As to a vested right, it reasoned that although under Senate Bill 2's sentencing scheme a defendant was entitled to a presumption of the lowest prison term available, this was only a presumption, not a guarantee. *Id.* at ¶ 24. As to an accrued substantial right, the court found that defendants are not entitled to enforce or protest specific sentences prior to

sentencing as would be required of an accrued substantial right. *Id.* at ¶ 25.

For all of these reasons, the Third District concluded that *Foster* does not violate Ohio or United States Constitutions.

Finally, this court has also reiterated that we cannot overturn Ohio Supreme Court holdings and are bound by those holdings. *State v. Mills*, 7th Dist. No. 06-BE-14, 2006-Ohio-7077, at ¶ 26. Although we were not faced with a case where an appellant raised an ex post facto issue that was ripe for review, as we are here, we nonetheless stated, "we could not find that the remedy announced by the *Foster* Court was violative of separation of powers or ex post facto clauses." *Id.* And we noted that the Ohio Supreme Court denied a reconsideration motion in *Foster,* which urged that the *Foster* holding was violative of the ex post facto clause. *Id.,* citing *State v. Foster,* 109 Ohio St.3d 1408, 2006-Ohio-1703. Thus, the Court seems to have implicitly found no merit with the argument that the *Foster* remedy violates the ex post facto clause.

Given the above reasoning, we conclude that *Foster* does not violate appellant's due process rights or the ex post facto clause.

Accordingly, appellant's third and fourth assignments of error are without merit.

Appellant's fifth assignment of error states:

"THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE THAN-THE-MINIMUM-CONCURRENT PRISON TERMS BASED ON THE OHIO SUPREME COURT'S SEVERANCE OF THE OFFENDING PROVISIONS UNDER FOSTER, WHICH WAS AN ACT IN VIOLATION OF THE PRINCIPLE OF SEPARATION OF POWERS."

Here appellant argues that the Ohio Supreme Court erred in fashioning its remedy in *Foster* because it violates the principle of separation of powers. He contends that the Court stepped

on the feet of the Legislature by enacting a new sentencing law when it severed portions of the sentencing law passed by the Legislature.

The Court had the authority to sever portions of the sentencing statutes that were unconstitutional. R.C. 1.50 addresses severance:

"If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

Thus, the Legislature itself anticipated that an unconstitutional portion of a statute could be severed from the remainder of the statute. Accordingly, appellant's fifth assignment of error is without merit.

Appellant's sixth assignment of error states:

"THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM-CONCURRENT PRISON TERMS CONTRARY TO THE RULE OF LENITY DICTATED A LESSER PENALTY [sic.]"

Appellant argues that the rule of lenity dictates that the Ohio Supreme Court should have interpreted the sentencing statutes so as to keep sentences to a minimum.

The "rule of lenity" was originally a common law rule of statutory construction, which has now been codified in R.C. 2901.04(A). *State v. Best*, 7th Dist. No. 04-MA-203, 2005-Ohio-4375, at ¶ 44. It provides:

"Except as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A).

The Third District recently addressed the identical argument appellant raises here. In *State v. Corbin,* 3d Dist. No. 1-06-23, 2006-Ohio-6092, at ¶ 13, the court reasoned:

  "While courts are required to strictly construe statutes defining criminal penalties against the state, the rule of lenity applies only where there is ambiguity in a statute or conflict between multiple states. *United States v. Johnson* (2000), 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39; *United States v. Lanier* (1997), 520 U.S. 259, 266, 117 S.Ct. 1219 137 L.Ed.2d 432; *State v. Arnold* (1991), 61 Ohio St.3d 175, 178, 573 N.E.2d 1079. There exists no ambiguity in the sentencing statutes in Ohio because the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework were unconstitutional and void in *State v. Foster, supra.* Therefore, the rule of lenity has no bearing on the present case because *Foster* can be easily understood to state that portions of the sentencing framework are unconstitutional and provides no ambiguity as to the unconstitutionality of certain statutes."

Based on the reasoning of our sister district, appellant's sixth assignment of error is without merit.

Appellant's seventh assignment of error states:

"THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM-CONCURRENT PRISON TERMS CONTRARY TO THE INTENT OF THE OHIO LEGISTLATORS."

Appellant argues the Ohio Supreme Court's remedy in *Foster* detracts from the goals of consistency and proportionality of Senate Bill 2. He contends that we must ignore the Court's severance remedy and simply impose minimum, concurrent sentences for him.

We are not free to disregard the Ohio Supreme Court's clear mandate. *Mills,* 7th Dist. No. 06-BE-14, at ¶ 26. In *Foster,* the Court ordered that those cases pending on direct review, in which the sentences were based on the severed, unconstitutional statutory sections, must be remanded to trial courts for new sentencing hearings. *Foster,* 109 Ohio St.3d at ¶

104. Thus, we cannot simply ignore the Court's severance remedy and impose a minimum, concurrent sentence as appellant wishes. Accordingly, appellant's seventh assignment of error is without merit.

For the reasons stated above, counsel's motion to withdraw is hereby sustained and the trial court's judgment is affirmed.

*State v. Palmer, supra,* 2007 WL 969423.

The factual findings of the state appellate court are presumed to be correct. 28

U.S.C. §2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was

contrary to or an unreasonable application of clearly established federal law, or based on

an unreasonable determination of the facts in light of the evidence that was presented. 28

U.S.C. §2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000). Petitioner has failed to meet this standard here.

To the extent that petitioner raises issues regarding the alleged violation of state law, such claims are not appropriate for federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state

appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

As to petitioner's claim of ineffective assistance of counsel, the right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id.* at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id* . To establish the second prong of the *Strickland* test, prejudice, a Petitioner must demonstrate

that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

For the reasons detailed by the state appellate court, this Court is not persuaded that the state court's decision rejecting petitioner's claim of ineffective assistance of counsel based upon his attorney's failure to argue mitigating factors or object to his sentence as imposed in violation of state law is contrary to or an unreasonable application of *Strickland*, or based on an unreasonable determination of the facts so as to warrant federal habeas corpus relief. *See Williams v. Taylor, supra.*

This Court similarly is unpersuaded by petitioner's argument that his sentence violated the Ex Post Facto Clause. As noted by the United States District Court for the Southern District of Ohio, Western Division, in *Dickens v. Brunsman*, 2009 WL 3199066 (S.D. Ohio September 29, 2009),

> Petitioner's claim that the retroactive application of the *Foster* remedy to correct constitutional infirmities in Ohio's sentencing statutes constitutes a violation of the Constitution's Ex Post Facto and Due Process Clauses has been thoroughly discussed and uniformly rejected by this Court and other federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets,* No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases cited therein); *see also Wright v. Warden*, Pickaway Corr. Inst.,

--- F.Supp.2d ----, No. 1:07cv1022, 2009 WL 1850170, at *1, *23-25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be published) (and cases cited and quoted therein); *Kelley v. Brunsman*, ---F.Supp.2d ----, No. 1:08cv71, 2009 WL 1617774, at *5-6, *17-18 (S.D. Ohio June 9, 2009) (Spiegel, J.; Hogan, M.J.) (to be published); *Smith v. Brunsman*, --- F.Supp.2d ----, No. 1:07cv878, 2009 WL 530113, at *1, *4-8 (S.D. Ohio Feb.27, 2009) (Barrett, J.; Black, M.J.) (to be published) (noting that "both the federal district courts and Ohio courts have rejected ex post facto challenges to the *Foster* decision").FN8

FN8. *See also Rettig v. Jefferys*, 557 F.Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject [ing] ex post facto challenges to the *Foster* decision"); *Smith v. Welch,* No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M .J.) (unpublished); *Schaub v. Brunsman*, No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.; Perelman, M.J.) (unpublished); *Mason v. Brunsman*, No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe*, No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper*, No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson*, No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D. Ohio Apr.30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman*, No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar.5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe*, No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D. Ohio Feb.27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein). *Cf. Turner v. Warden, Noble Corr. Inst.*, No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar.31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected ex post facto challenges to the *Foster* decision"); *Collins v. Warden, Chillicothe Corr. Inst.*, No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar.17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely*, his new

sentence [under the *Booker* remedy adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

*Id*. This Court agrees other courts that have considered this same issue, and rejected this claim.

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

*Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. As petitioner apparently concedes (see Doc. 14, p. 11), Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh*, No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb.1, 2008) (unpublished); see also Rogers, 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit ex post facto judicial decision-making. Rogers, 532 U.S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id*. at 459 (citing *Bouie*

42

> *v. City of Columbia,* 378 U.S. 347, 351, 352, 354-55, 84 S.Ct. 1697,
> 12 L.Ed.2d 894 (1964)); *see also United States v. Barton,* 455 F.3d
> 649, 654 (6th Cir.) ("when addressing ex post facto-type due
> process concerns, questions of notice, foreseeability, and fair
> warning are paramount"), *cert. denied,* 549 U.S. 1087, 127 S.Ct.
> 748, 166 L.Ed.2d 579 (2006).
>
> Here, petitioner is unable to prevail on any claim that he lacked
> sufficient notice or "fair warning," because *Blakely, Booker,* and
> *Foster* did not change the elements necessary to convict
> petitioner ... and petitioner was aware of the potential penalties
> he faced ... [B]oth before and after *Foster,* petitioner was on
> notice and thus had "fair warning" of the potential penalties he
> faced and of the trial court's discretion to impose those
> penalties.

*Hooks v. Sheets,* 2008 WL 4533693 (S.D. Ohio October 3, 2008); *see also Trewartha v. Brunsman,* 2009 WL 614963 (S.D. Ohio March 5, 2009); *Smith v. Wilson,* 2008 WL 4758696 (N.D. Ohio October 29, 2008) (same). The same reasoning in the foregoing decisions rejecting ex post facto challenges to application of *Foster* applies here. Petitioner faced the same penalty ranges in sentences for his convictions prior to *Foster,* and after *Foster.* Therefore, the trial court's imposition of non-minimum consecutive terms after *Foster* did not violate the Ex Post Facto or Due Process Clause. Petitioner has failed to establish the ineffective assistance of counsel under *Strickland* due to his attorney's failure to object to his sentence on this basis.

Claims two and nine are without merit.

## CLAIM TEN

In claim ten, petitioner asserts that he was denied the effective assistance of counsel.

Petitioner asserts that his attorney improperly failed to subpoena for trial or interview

Amber Hood; failed to offer testimony or conduct depositions of medical personnel; and withheld a cassette recording that contained exculpatory evidence. *See Exhibit 15 to Return of Writ.*

In support of this claim, petitioner attached to his petition for state court post conviction relief an affidavit from Amber Hood, which indicates in relevant part as follows:

> On September 1, 2004 me and my boyfriend Atropin Palmer was having a serious argument in the street, when this person call me over to his residence I ran into the residence before I enter the residence my boyfriend pushed me into the door and the window. My boyfriend Palmer was at the entry of the door and was push out of the entry by the own[er] of the residence who said he was calling the police 911. My boyfriend turnaround and ran.
>
> Mr. Palmer never threatened or cause physical harm or inflict physical harm to the own[er] of the residence. Why, I am now come forward with this information, cause I received a letter from Palmer stating he doing 10 year in ... prison for the inciden[t] that took place....
>
> I was really upset and anger with him at that time. I was never subpoena to testif[y] in his behalf....

*Affidavit of Amber Hood, Exhibit 15 to Return of Writ.*[3]

The state appellate court rejected petitioner's claim of ineffective assistance as follows:[4]

_____

[3] All of petitioner's on-the-record claims of ineffective assistance of counsel, which he asserted on direct appeal, are barred, for the same reasons discussed, *supra, i.e.*, due to petitioner's failure to file a timely appeal to the Ohio Supreme Court.

[4] The state trial court denied petitioner's post conviction petition as follows:

As to defendant's claim of ineffective assistance of counsel for failing to

This case originated with a judgment convicting Palmer of aggravated burglary and escape and the resulting sentence following a jury trial. This court in its prior opinion described the facts of the case as follows. Just after midnight on September 1, 2004, Michael Merritt was watching television in his home in Steubenville when he heard his dog barking and a woman crying out for help. He looked out his window and saw Palmer holding a woman down and punching her. Merritt called the police and then went out to help the woman.

The woman, Amber Hood, ran with Merritt back to his house

_____

subpoena Amber Hood, the court finds that:

   a. Amber Hood was subpoenaed by the State of Ohio but was unable to be located and served;

   b. The testimony which defendant claims that Amber Hood would have provided is not consistent with the statements made by Amber Hood.

   c. There was sufficient evidence due to the testimony of Mr. Merritt from which the jury found the defendant guilty of the offence of aggravated burglary.

As to defendant's claim of ineffective assistance of counsel for failure to proffer testimony or take a deposition from medical personnel, there is nothing contained in any of the pleadings, police reports or other matters within the file that would substantiate the testimony which the defendant claims said medical personnel could have provided....

As to defendant's claim of ineffective assistance of counsel claiming that defendant's counsel should have introduced a cassette recording between counsel and an unidentified person, the court finds that there is nothing contained within the pleadings or other matters contained in the court file to substantiate defendant's claim that such recording exists and, further, if there was such a recording, it would be inadmissable if offered by the defendant in defendant's case in chief, unless some exception to the hearsay rule was shown.

*Exhibit 17 to Return of Writ.*

and he ushered her inside. Palmer followed them onto Merritt's porch. Merritt pushed Palmer out of the way, closed his front door, and locked the deadbolt. According to Merritt, Palmer punched out the glass windows in his front door and unlocked the deadbolt. Palmer then entered Merritt's foyer. The two struggled and Palmer took a swing at Merritt. Merritt eventually forced him out of the house and Palmer ran away.

Patrolman Matthew Smarrella arrested Palmer later that day on a charge of aggravated burglary. Palmer was taken to jail and processed. Later, while Detective Anthony Piergallini was taking appellant's fingerprints, Palmer ran out of the police department. Numerous officers chased after Palmer and caught him in an alley.

Palmer was brought to trial and the jury found him guilty as charged. After filing a direct appeal and losing on all claims, Palmer filed a petition for post-conviction relief with the trial court claiming that trial counsel was ineffective in representing him. On August 18, 2005, the trial court denied his petition.

On appeal, Palmer raises multiple issues and assignments of error. Many of them deal with Palmer's claim that his trial counsel was ineffective. They will be addressed together and are as follows:

"not that it was a problem subpoen [sic] Ms.Amber Hood, it's the investigations of counsel and the effective assistance of reasonable ness [sic]."

"medical personnel was call to the resident; said medical personnel could have provided, had counsel made some reasonable investigation, to the police reports or these persons under reasonableness effective assistance of counsel."

"counsel with holding [sic] of exculpatory evidence. The evidence was a cassette recording that counsel had in her personal control and the significant of the information and testimony of the cassette recording, had counsel submit as evidence. Counsel disclosed this significant information regarding the alleged crime."

"the trial court error, when its decision was this was a unidentified person. When petitioner, Palmer made these allegation knowed [sic] in the postconviction to the court about his attorney was appointed by the court themselves [sic] for representation of him, now Mr. Palmer has realized the (tape recording counsel had could have provening [sic] his innocences [sic] ), this merely facts alleged current, was a possibility to called in questions his counsel performance and the 'Truth' to Mr. Palmer claim counsel conduct and action and representational."

Pursuant to R.C. 2953.21(A)(1),

"Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief."

This section further provides that "[b]efore granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief." R.C. 2953.21(C).

In determining whether there are substantive grounds for relief to warrant a hearing,

"the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of court, and the court reporter's transcript." R.C. 2953.21(C).

If the court determines that there are no substantive grounds for relief, it may dismiss the petition without an evidentiary

hearing. *See State v. Calhoun* (1999), 86 Ohio St .3d 279, 281, at 282-283; *State v. Cole* (1982), 2 Ohio St.3d 112; *State v. Jackson* (1980), 64 Ohio St.2d 107. In a petition for post-conviction relief which asserts ineffective assistance of counsel, "before a hearing is granted, 'the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " *Calhoun*, at 283, quoting *Jackson*, at syllabus. (Emphasis added in *Calhoun*.)

Here, Palmer asserts that counsel was ineffective for not investigating or interviewing the victim, Amber Hood, as she would have been a viable witness for the defense. He further claims that counsel was ineffective for failing to take depositions of medical personnel that arrived at the scene. Finally, Palmer maintains that counsel was ineffective for failing to submit an audio cassette that allegedly contained exculpatory evidence. Although Palmer later presented the court with his own sworn affidavit in a motion for reconsideration of the court's denial of post-conviction relief, Palmer has failed to attach any documents or evidentiary support to his actual petition. Accordingly, the trial court did not err in dismissing his petition based on the claims of ineffective assistance of counsel.

Next, Palmer claims:

"trial court error, when it's ruling was without support, cause there not one statement from Ms. Hood, in the criminal rule16(B), 7(E), 12(D) BILL OF PARTICULARS & FOR DISCOVERY."

Although Palmer failed to support any of his claims with evidentiary support, the trial court still addressed the merits of portions of Palmer's petition. With respect to Palmer's claim that counsel should have further investigated Hood as she would have given favorable testimony at trial, the court determined that these alleged statements were inconsistent with prior damaging statements made by Hood. Palmer claims that the trial court based this decision on evidence that was not

handed over in discovery.

This claim is without merit, however, as the trial court in its judgment entry merely references prior statements made by Hood to police. These statements are described in the police report which was properly filed in the record. Accordingly, Palmer cannot now claim that the trial court based its decision on evidence that was not available to Palmer through discovery.

Next Palmer claims:

"under issue (3), testimony of Mr. Merritt is not contained in any of the criminal rule16(B), 7(E), 12(D)"

This assertion refers to the audiotape that Palmer claims his trial counsel has withheld from both Palmer and the trial court. Allegedly, the audiotape contains a conversation that took place between trial counsel and Merritt regarding whether Palmer actually entered Merritt's residence. However, Palmer has attached no documentary evidence or affidavits to his petition to support his claim that this audiotape actually exists. Moreover, Palmer has raised this particular issue for the first time on appeal. Failure to assert an alleged error in the trial court waives that error on appeal. *State v. Awan* (1986), 22 Ohio St.3d 120, 122. Accordingly, this argument is also without merit.

*State v. Palmer, supra*, 2006 WL 2573710. Again, the factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e). The record fails to reflect a basis for federal habeas corpus relief. 28 U.S.C. §2254(d).

As discussed by the state appellate court, nothing in the record supports petitioner's claim that medical documents, testimony by medical personnel, or admission of a cassette recording, would have assisted the defense. At least one police report indicates that Amber

Hood told Officer Smarrrella, when he arrived at the scene, that

> Atropin Palmer struck her several times in face with his hand
> and then placed his hand over her mouth in an attempt to keep
> her from screaming. She stated that while Palmer held his
> hand over her mouth, he told her to shut up or he would kill
> her.

*See Attachments to Exhibit 28 to Return of Writ.* In view of Merritt's testimony, and Hood's

prior statements to police, petitioner cannot establish the ineffective assistance of counsel

based upon his attorney's failure to subpoena or call Hood as a defense witness.

Claim ten is without merit.


## CLAIM TWELVE

In claim twelve, petitioner asserts that the state courts improperly denied his

petition for post conviction relief. This claim fails to present an issue appropriate for

federal habeas corpus review. "[T]he Sixth Circuit has consistently held that errors in post-

conviction proceedings are outside the scope of federal habeas corpus review." *Cress v.*

*Palmer*, 484 F.3d 844, 853 (6th Cir. 2007), citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.

2002).

> [C]laims challenging state collateral post-conviction
> proceedings "cannot be brought under the federal habeas
> corpus provision, 28 U.S.C. § 2254," because " 'the essence of
> habeas corpus is an attack by a person in custody upon the
> legality of that custody, and ... the traditional function of the
> writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d
> at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct.
> 1827, 36 L.Ed.2d 439 (1973)).... A due process claim related to
> collateral post-conviction proceedings, even if resolved in a

petitioner's favor, would not "result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id.* at 248. ... *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [ sic ] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Id.*

Claim twelve is without merit.

## CLAIM THIRTEEN

In claim thirteen, petitioner asserts that he was denied the effective assistance of counsel and the right to appellate review because his attorney filed no merit brief in the appeal of his re-sentencing. This claim is plainly without merit.

Petitioner's appellate counsel was not required to advance issues he deemed frivolous, nor is the State required to appoint new counsel after petitioner's attorney was permitted to withdraw from a frivolous appeal. *See Salce v. Wilson,* 2009 WL 1797923 (N.D. Ohio June 24, 2009)(noting same). Petitioner's attorney filed a motion to withdraw under *State v. Toney,* 23 Ohio App.2d 203 (Ohio App. 7th Dist. 1970), following the dictates set forth by the United States Supreme Court in *Anders v. California*, 386 U.S. 738 (1967):

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court

and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court-not counsel-then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

***

This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal-as nearly as is practicable-as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel.

*Id.*, at 744-745 (footnote omitted). Such were the circumstances that occurred in this case.

*See Exhibits* 24.5, 27, 28.

Claim twelve is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's request for discovery, an evidentiary hearing, a free copy of the trial transcripts, and for "verification and certification" of his amended traverse, Doc. Nos. 42-45, 47, 50, are **DENIED**. Petitioner's motion to amend the traverse, Doc. No. 46, is **GRANTED**. His request for the appointment of counsel, see Doc. No. 46, is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse

decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge